**UNITED STATES of America, Appellee,**

v.

**Dolores MACKIE and Celita Friera, Appellants.**

**Nos. 81–1704, 81–1713.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1982.

Decided June 9, 1982.

Rehearing and Rehearing En Banc Denied Aug. 5, 1982.

Jeffrey M. Evans, Seattle, Wash., argued for appellants; Robert J. Wayne, Seattle, Wash., on brief for Mackie, Michael A. Frost, Seattle, Wash., on brief for Friera.

Genevieve Holm, Washington, D. C., for appellee.

Before WRIGHT, SKOPIL, and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellants appeal their convictions for violations of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. §§ 703, 707(b). The only issue is whether they should have been prosecuted under the more specific Bald and Golden Eagle Protection Act (BGEPA), 16 U.S.C. § 668(a).

■ When an act is proscribed by more than one criminal statute, the government may elect to prosecute under either so long as it does not discriminate against any class of defendants, *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979), and so long as the legislative history does not indicate that Congress intended to prohibit prosecution under the more general statute. *United States v. Jones*, 607 F.2d 269, 271–72 (9th Cir. 1979), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1043, 62 L.Ed.2d 771 (1980); *accord, United States v. Deggs*, 632 F.2d 829, 830 (9th Cir. 1980); *United States v. Abraham*, 627 F.2d 205 (9th Cir. 1980).

■ The MBTA, 16 U.S.C. §§ 703, 707(b), and the BGEPA, 16 U.S.C. § 668(a), prohibit offering to sell or selling eagles or parts of eagles. Both Mackie and Friera offered to sell and sold whole eagles and eagle parts to undercover agents. Appellants violated both statutes.

They have not shown that their prosecution under the MBTA results in discrimination against any class of defendants. They assert, however, that Congress intended to prohibit prosecution under the MBTA because the more specific BGEPA preempts the MBTA.

Citing *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978), appellants argue the broad proposition that simply enacting a specific statute manifests congressional intent to preempt more general statutes. We decline to extend *Simpson* so far.

In *Simpson*, the Court relied on legislative history and not on the mere existence of a previously enacted specific statute.[1] It concluded that Congress, by adopting a more general sentencing statute, did not intend to pyramid two facially applicable sentencing enhancement provisions.

Noting that the sponsor's floor remarks expressed an intent to preclude application of the general sentencing provisions when a more specific sentencing statute was available, the Court refused to permit defendant's sentencing under both. 435 U.S. at 16, 98 S.Ct. at 914–15. The Court found also that these remarks were an affirmative indication that Congress intended only the specific enhancement provision to apply. *See Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

In contrast to *Simpson*, nothing in the legislative history of the MBTA or the BGEPA indicates a congressional intent to prohibit prosecution under the MBTA. Indeed, during hearings prior to enactment of the 1978 Fish and Wildlife Improvement Act, agency representatives testified that several statutes concurrently protect eagles. The sponsor of the Improvement Act repeated, in floor debate, that eagles are protected by both the MBTA and the BGEPA. 124 Cong.Rec. 114 (1978). Congress subsequently passed the Improvement Act, amending provisions of the MBTA without addressing the overlapping coverage of eagles.

We do not ignore the plain meaning and application of a statute in the absence of an affirmative congressional indication that it should not apply. We conclude that the government properly elected to proceed under the MBTA.[2]

Appellants argue also that the 1972 Agreement between the Presidents of the United States and the United Mexican States, if effective to expand the criminal sanctions of the MBTA to include eagles, is an unconstitutional delegation of congressional power.

The MBTA protects birds listed in several treaties. One of those, the 1936 Convention with Mexico, expressly contemplates that future agreements between the Presidents of the two countries will modify the Convention. 50 Stat. 1311, T.S. No. 912. Such agreements, while not treaties, are clear evidence of the contractual relationship between the parties to the convention. *Husserl v. Swiss Air Transport Co.*, 351 F.Supp. 702, 707 (S.D.N.Y.1972), *aff'd per curiam*, 485 F.2d 1240 (2nd 1973).

Eagles were brought within the MBTA by a 1972 presidential agreement, pursuant to the terms of the 1936 Convention with Mexico. That agreement added the family "Accipitridae (Eagles, Hawks)" to the preexisting list of migratory birds protected under the convention with Mexico. 23 U.S.T. 260, T.I.A.S. No. 7302 (1972). Obviously, eagles are protected by the MBTA.

---

1. The court buttressed its interpretation of the legislative history by noting that the result was consistent with several canons of statutory construction. *Simpson*, 435 U.S. at 14–15, 98 S.Ct. at 913–14.

2. Appellants' citation to *United States v. Hughes*, 626 F.2d 619 (9th Cir.), *cert. denied*, 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 611 (1980), does not require a different result. This court, in *Hughes*, found no support in the legislative history for the suggestion that, when both a specific and general statute were equally applicable, Congress intended only the specific proscription to apply to defendant's conduct. 626 F.2d at 625.

Appellants' assert that under the rationale of *Hughes* the two offenses prohibited by the MBTA and the BGEPA are not sufficiently distinct to justify prosecutorial discretion.

The contention is meritless. The mens rea requirements of the two statutes are distinct. Although the BGEPA was modeled after and, in some respects, duplicates the offenses enumerated in the MBTA, the two statutes provide different regulatory schemes. *United States v. Corbin Farm Service*, 444 F.Supp. 510 (E.D.Cal. 1978); *see United States v. Hetzel*, 385 F.Supp. 1311 (W.D.Mo.1974).

We are persuaded that Congress has not unlawfully delegated power to the President to explicate the treaty's terms. The President's authority to deal in foreign affairs is necessarily broad. *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 319–20, 57 S.Ct. 216, 220–21, 81 L.Ed. 255 (1936). The 1936 Convention indicates congressional policy with regard to migratory birds, and Congress has chosen the criminal sanctions for violation of that policy. The power to determine the specific terms required to effectuate congressional purpose is lawfully delegated to the President when the terms must be agreeable among several foreign nations. *Id.* at 329, 57 S.Ct. at 225.

Appellants' convictions are affirmed. The mandate will issue now.