UNITED STATES of America, Appellee,

v.

Winston M. BOGGS, Appellant.

UNITED STATES of America, Appellee,

v.

Howard M. NEUBERT, Appellant.

Nos. 84–1097, 84–1098.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1984.

Decided Aug. 3, 1984.

Hal D. Hardin, Robert L. Baker, Nashville, Tenn., for appellant Neubert.

Doug Wood, North Little Rock, Ark., for appellant Boggs.

George W. Proctor, U.S. Atty. by Fletcher Jackson, Asst. U.S. Atty., Little Rock, Ark., Judith A. Rutledge, Sp. Asst. U.S. Atty., Fort Worth, Tex., for appellee.

Before LAY, Chief Judge, and ROSS and FAGG, Circuit Judges.

LAY, Chief Judge.

Howard Neubert and Winston Boggs entered a conditional plea of guilty to a violation of section 11903(a) of the Interstate Commerce Act. 49 U.S.C. § 11903(a) (Supp. V 1981); *see* Fed.R.Crim.P. 11(a)(2). On the basis of stipulated facts, the district court, the Honorable Henry Woods presiding, accepted their pleas and subsequently denied their motion to arrest judgment. The defendants appeal contending that the stipulated facts are insufficient to establish a violation of section 11903(a). We affirm.

Section 11903(a) makes it a felony for a "motor common carrier" to transport freight at a rate that is less than that approved by the Interstate Commerce Commission. As stipulated, Neubert was the traffic manager of the American Olean Tile Company (AOT). In this position, Neubert controlled the routing of the AOT's freight shipments. Neubert was also the secretary and part-owner of Truck Services, Inc. Mr. Farrell was the president and other owner of Truck Services, Inc. Truck Services arranged the transportation of interstate shipments of freight. Boggs was an independent transportation consultant who derived his earnings from commissions paid to him by motor carriers for arranging the transportation of the shipment of freight. As a commissioned consultant for Truck Services, Inc., Boggs arranged for C&L Trucking, Inc., a motor carrier subject to the jurisdiction of the ICC, to transport a shipment for AOT. As arranged, AOT paid C&L $2,962.50, from which C&L then rebated $144.00 to Truck Services, Inc. It is also stipulated that Neubert, Farrell, and Boggs all received a financial interest in the $144 rebate.

Neubert and Boggs contend that the facts, as stipulated, do not constitute a violation of section 11903(a). An element of a section 11903(a) violation is that the prohibited act involve a motor *common* carrier; however, in the stipulation of facts, C&L is referred to simply as a "motor carrier." *See infra* n. 2. With due recognition to the relevance of the distinction between the two terms, we find that this argument is without merit. The indictment under which both defendants were charged explicitly and repeatedly refers to C&L as a "motor common carrier." At the time they entered their conditional pleas of guilty, the defendants clearly were aware that they were being charged with a violation of section 11903, which relates to motor common carriers. In their motion to dismiss, however, the defendants focused solely on the brokerage issue and did not raise the issue of whether C&L was a motor common carrier or a motor carrier.[1]

---

1. The issue of whether C&L was or was not a common carrier was not raised until the Motion to Arrest Judgment. Under Fed.R.Crim.P. 34, a

C&L was in fact a motor common carrier, as the record now shows. It is undisputed that subsequent to the court's acceptance of the pleas, but prior to the entry of judgment and sentencing, the government filed with the court a certificate from the Secretary of the ICC certifying that C&L had been a motor common carrier subject to the jurisdiction of the ICC since August 23, 1979. For these reasons, we reject the defendants' argument.

The more serious issue raised by the parties is whether amendments to the Elkins Act are such that section 11903(a) no longer includes a rebate within its prohibition. Section 11903(a) had its roots in the Elkins Act, which explicitly prohibited rebates:

> [I]t shall be unlawful for any person ... to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said chapter....

Elkins Act, 49 U.S.C. § 41(1) (1976) (repealed by Pub.L. No. 95–473, § 4(b)(c), 92 Stat. 1466, 1470 (1978)); *see also United States v. Braverman,* 373 U.S. 405, 83 S.Ct. 1370, 10 L.Ed.2d 444 (1963) (Elkins Act prohibits solicitation of rebates, regardless of for whose benefit sought). Defendants essentially concede that the Elkins Act as construed in *Braverman,* outlawed their actions. They contend that the recodification of the Act in 1978 made significant substantive changes in the scope and application of the Act. Recodified, section 11903(a) reads:

A person that knowingly offers, grants, gives, solicits, accepts, or receives *by any means* transportation or service provided for property by a common carrier ... (1) at less than the rate in effect under chapter 107 of this title, or (2) by practicing discrimination, shall be fined at least $1,000 but not more than $20,-000, imprisoned for not more than 2 years, or both.

49 U.S.C. § 11903(a) (Supp. V 1981) (emphasis ours). Defendants contend that the deletion of the word rebate from the proscribed means of transferring property for less than the published rate reflects a congressional intention to eliminate rebating from the scope of a section 11903(a) violation.

■ Despite the deletion of the specific reference to rebating, we find that defendants' conduct is clearly within the prohibition of section 11903(a). Section 11903(a) replaced a specific coverage of the prohibited means of transferring property at less than the published rate with a general proscription against *any* means. Clarity was the stated reason for the change and there is no evidence of an intent to change the substance or scope of the Act. H.R.Rep. (Judiciary Committee) No. 45–1395, 95th Cong., 2d Sess. (1978) at 5. Accordingly, we find that rebating is still a "means" within the prohibition of section 11903(a).[2]

Finally, Neubert and Boggs contend that they were acting as brokers when they received the rebate. *See* 49 U.S.C. § 10102(1) (Supp. V 1981). The Motor Carrier Act of 1980, Pub.L. No. 96–296, 94

---

motion to arrest judgment must allege either that the indictment does not charge an offense or that the court was without jurisdiction of the offense charged. The defendants cannot argue either point successfully. Furthermore, assuming, as they now assert, that there was an insufficient factual basis for their conditional pleas of guilty, we deem it significant that the defendants did not file a motion to withdraw their pleas of guilty under Fed.R.Crim.P. 32(d).

**2.** Defendants also seek reversal on the ground that if guilty, they should have been charged with a misdemeanor under § 11904(b), which specifically refers to rebates related to motor carrier transportation, rather than § 11903(a),

which generally prohibits the transportation of property by any common carrier subject to the jurisdiction of the ICC at less than the published rate. *Compare* 49 U.S.C. § 11904(b) (Supp. V 1981) *with id.* § 11903(a). Although the defendants' actions may also be proscribed by another section, the government is not thereby precluded from prosecuting under the provision of its choice. *See United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

We also reject the defendants' reliance on the changes instigated by the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980). The MCA did markedly relax the restrictions placed on the trucking industry; however, the Act left § 11903(a) intact.

Stat. 793 (1980), portended a general relaxation of the regulations governing brokerage activities. *See* 49 C.F.R. 1045.9(a)(1)–(2) (1980). Regulation 1045.9 was revised and the language prohibiting brokers from receiving rebates where they have an "affiliation" with the shipment, or where they have control "by reason of [their] performance for the shipper," was deleted. The regulation now prohibits brokers from receiving rebates where "(1) The broker owns or has a material beneficial interest in the shipment or (2) The broker is able to exercise control over the shipment because the broker owns the shipment, the shipper owns the broker, or there is common ownership of the two." 49 C.F.R. 1045.9(a)(1)–(2). Contending that a "material beneficial interest" is equivalent to an ownership interest, defendants assert that only an *ownership* interest in the shipment prevents a broker from receiving a rebate for services. *See Jensen v. Federal Maritime Commission*, 497 F.2d 1053 (8th Cir.1974). Because Neubert had no *ownership* interest in AOT or, therefore, its shipments, defendants contend that their actions are not prohibited by law.

Although recognizing the regulation changes generated by the Motor Carrier Act, the government contends first, that because Truck Services was not a licensed broker, it cannot seek refuge in the regulations governing licensed brokers. Second, the government urges that the revision was made in order to allow brokers to have a pool of shipper and carrier clients among whom they arrange shipments. The government contends that in the instant transaction, the brokerage service was merely a sham operation, designed to accomplish an illegal rebate.

■ Without addressing the government's first contention, we find that the relaxation in the regulation of brokerage activities in the MCA was not intended to legitimize the situation with which we are presented. By virtue of his employment status, Neubert was the person in control of the routing of AOT's shipments. We

find that Neubert's relationship with AOT is such that he is precluded from collecting rebates for the same routing decisions for which he was responsible.[3]

For these reasons, we affirm the defendants' conviction under section 11903(a).

---

3. We find no support in the briefs or record for Boggs' contention at oral argument that he had no knowledge of Neubert's connection to Truck Services because Mr. Farrell had handled the transaction at issue here.