**UNITED STATES of America,**

v.

**Peter BENNERSON, Defendant.**

**No. S84 Cr. 1012–CSH.**

United States District Court, S.D. New York.

May 28, 1985.

On Motion To Dismiss Second Superceding Indictment Aug. 1, 1985.

**168**

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States; Peter M. Lieb, Asst. U.S. Atty., New York City, of counsel.

Caesar D. Cirigliano, The Legal Aid Society, Federal Defender Services Unit, New York City, for defendant; Jack Lipson,

Catherine Foti, Student Intern, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

 Defendant was arrested upon reports that he had stolen a federal Social Security check payable to another, forged an endorsement on it, and cashed it. In a complaint filed December 4, 1984, he was charged with "uttering as true" a forged endorsement on a United States Treasury check, in violation of 18 U.S.C. §§ 495 and 510, and possessing stolen mail in violation of 18 U.S.C. § 1708.

A two-count indictment was filed on December 21. Count one charged theft and conversion of a Treasury check in violation of 18 U.S.C. § 641; count two charged forgery of an endorsement on the check in violation of 18 U.S.C. § 510.

Sometime after defendant's indictment, the Government realized that the theft occurred outside the Southern District. In consequence, venue did not lie in this district to prosecute defendant for theft and conversion under § 641. The Government cured venue by filing a superceding indictment on March 21, 1985. The one-count superceding indictment charges defendant with uttering as true a forged writing with intent to defraud the United States in violation of 18 U.S.C. § 495.

Sections 495 and 510 are similar. Section 495 forbids, in its first paragraph, the forgery of a writing for the purpose of obtaining money from the United States. The second paragraph forbids uttering as true any such forged writing with the intent of deceiving the Government.[1] Forged endorsements on Treasury checks have long

---

1. Section 495 states in relevant part:

 Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

 Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited ...

 Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

been recognized as falling within those provisions of § 495. A more narrowly tailored statute, § 510 deals solely with United States Treasury checks. Section 510(a)(1) forbids forging an endorsement on a Treasury check, and § 510(a)(2) forbids uttering a Treasury check bearing a forged endorsement.[2] Defendant's alleged behavior fits into all four categories.

Defendant moves to dismiss the superceding indictment on two grounds: 1) that the crime charged in it may be properly charged only under 18 U.S.C. § 510, as the original indictment charged and 2) that he was not timely indicted on the § 495 charge under the Speedy Trial Act.

I will address the latter argument first. The Speedy Trial Act requires that "any ... indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested ... in connection with such charges." 18 U.S.C. § 3161(b). If the indictment is not obtained within thirty days, 18 U.S.C. § 3162(a)(1) mandates dismissal of the charge upon which the defendant was arrested.[3]

Defendant's argument is straightforward. He was arrested in December and charged in a complaint with uttering a falsely endorsed instrument in violation of §§ 495 and 510. He was timely indicted only on forgery charges under § 510.

Thus the complaint's uttering charges under § 495 must be dismissed. The Government responds in essence that it satisfied the Act by indicting defendant on substantially similar charges within the thirty day time limit.

I am unimpressed by defendant's emphasis on the change in statutory basis for the charged crime. If the switch in the two indictments from § 510 to § 495 entailed nothing more than changing the number of the statute under which defendant is charged, I would be tempted to analogize it to the alteration in the defendants' names which was found insignificant for purposes of § 3161(b) in *United States v. Mitchell*, 723 F.2d 1040, 1044–45 (1st Cir.1983).

More is involved here, however. In the first indictment, defendant was charged with forging an endorsement on a Treasury check of value under $500, a misdemeanor. In the superceding indictment, defendant is charged with uttering a writing bearing a forged endorsement, a felony. Not only are the penalties different, the offenses underlying them differ. Although uttering a check with a forged endorsement may entail the forging of an endorsement by the defendant (and did in this case), the offense is not the forging but the uttering. Uttering the check requires an act wholly separate from the act of forging the endorse-

---

**2.** Section 510 states in relevant part:
 (a) Whoever, with intent to defraud—
 (1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or
 (2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both ...
 (c) If the face value of the Treasury check ... or the aggregate face value, if more than one Treasury check ... does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000 or imprisonment for not more than one year, or both.

**3.** Section 3161(b) states in relevant part:
 (b) Any information or indictment charging an individual with the commission of an of-

fense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges....

Section 3162(a)(1) states:
 (a)(1) If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

ment. Plainly the elements of the offenses are different. Further evidence that the two offenses differ is the fact that they are listed in separate paragraphs within both §§ 495 and 510.

Defendant, as noted, was arrested and charged with uttering the check. Although he was timely indicted for forging an endorsement—an act mentioned in the factual allegations of the complaint but not charged—he was not indicted for uttering the check until several months after his arrest. A *prima facie* violation of § 3161(b) is present.

Two recent Second Circuit decisions provide guidance in this area. The first, *United States v. Gonzalez*, 748 F.2d 74, 79 (2d Cir.1984), construes § 3161(b). Defendant in *Gonzalez* was charged in a complaint with wire fraud of Bank A. He was timely indicted, however, for using essentially the same fraudulent scheme to defraud Bank B. Some months later, a superceding indictment was filed charging him with defrauding both banks. The Court of Appeals dismissed the charges alleging fraud on Bank A, finding that defendant had not been indicted on the charges until several months after his arrest in connection with them. 748 F.2d at 79. The court noted that "[t]he two charges [against Banks A and B], of course are related and grow out of the same fraudulent scheme, but they are not based on the same conduct or the sending of the same wires. Thus [the count alleging fraud against Bank A], rather than being an unchanged restatement of part of the original indictment, was a first indictment on a new charge."

In addition, the Court of Appeals recently construed § 3162(a)(1) in *United States v. Napolitano*, 761 F.2d 135 (2d Cir.1985). Defendant was arrested for applying for and using a bank account under a false name. No timely indictment was filed. Nearly two years later, an indictment was returned charging defendant with bank larceny and conspiracy to commit bank larceny, offenses different from those contained in the complaint. The trial court denied defendant's motion to dismiss the indictment as violating § 3161(b).

The Second Circuit affirmed. It rejected defendant's argument that the Act bars untimely prosecution "not only for the charge alleged in the complaint, but also for any conduct 'aris[ing] out of the same criminal episode' which was 'known or reasonably should have been known' at the time the complaint was filed," At 137, and adopted a literal construction of § 3162(a)(1). The Act requires dismissal of "such charge ... contained in such complaint," which the Court took to refer only to precisely the offense charged in the complaint. During debate on the original bill, Congress had rejected broad language such as that proposed by defendant. At 138. Thus the Court concluded, citing earlier cases, that

> a subsequent prosecution may be barred if it is based on an indictment which merely "gilds" an earlier charge or if the subsequent charge is a mere difference in accusational dates. In this case, the initial charge against the defendant for making a false application for a bank account was entirely different from and based on different proof than the later indictment for larceny of bank funds.

At 138.

The Government seeks to avoid the effect of *Gonzalez* by arguing that by implication *Gonzalez* permits a superceding indictment charging a new offense where the complaint, indictment, and superceding indictment are all "based on the same conduct." *Gonzalez, supra*, 748 F.2d at 79. This may well be true, but I cannot accept the characterization of the charges in the two indictments as being based on the same conduct. Defendant's uttering of the check was irrelevant to the forgery charges in the initial indictment, but it is an essential element of the count in the superceding indictment. Although it is true that, on the Government's account of the events, the uttering occurred nearly simultaneously with the forgery, was a part of the same scheme as the forgery, and as an offense includes forgery (although not nec-

essarily by the defendant) as an element, uttering is not the same conduct as forgery. The two offenses are based on different, if related, actions.

The Government seems to argue that because the defendant was indicted "in connection with" the arrest charges, the Act's requirement of a timely indictment was satisfied. (Gov.Mem. at 7). This twists the statute's language. The Act does not require indictment in connection with an arrest. Rather, it requires timely indictment "charging ... an offense" to be filed within thirty days of the defendant's arrest "in connection with" the offense. As noted above, defendant was arrested for uttering the check in December; he was not indicted for this offense until March. *Napolitano* would seem to dictate close adherence to the language of the statute. I can see no principled reason for evading that language in this case.

On the contrary, I conclude that the principles articulated in *Gonzalez* and *Napolitano* are controlling, and require dismissal. The uttering charge, when one considers the elements and the requisite proof, is clearly "a first indictment on a new charge." *Gonzalez, supra.*

Because defendant was not indicted for uttering a check bearing a forged endorsement within thirty days of his arrest on that charge, the superceding indictment, which charges only that offense, must be dismissed under 18 U.S.C. § 3162(a)(1). Because I find that the superceding indictment violates the Speedy Trial Act, I need not reach defendant's second ground for dismissal.

The question then arises, in the words of the second sentence of § 3162(a)(1), "whether to dismiss the case with or without prejudice...." The statute gives the trial court discretion on the matter, and requires consideration of several specific factors. But the briefs of counsel in the case at bar do not address how I should exercise that discretion, and I am not prepared to do so until counsel have been heard.

It follows that the superceding indictment is dismissed. Trial will not commence on June 3, 1985, as presently scheduled. Counsel are directed to serve and file briefs on the issue of dismissal of "the case with or without prejudice" not later than June 12, 1985.

In order that this important question be fully briefed and considered, I continue the case under § 3161(h)(8)(A), being of the opinion that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

It is SO ORDERED.

### On Motion to Dismiss Second Superceding Indictment

Defendant is alleged to have stolen a $274 Treasury check, forged an endorsement on it, and cashed it. In a two-count indictment filed December 21, 1984, he was charged with stealing a thing of value of the United States, in violation of 18 U.S.C. § 641, and forging an endorsement on same in violation of 18 U.S.C. § 510. Upon realizing that the theft, although not the forgery, occurred outside the Southern District of New York, the Government on March 21, 1985, filed a one-count superceding indictment charging defendant with uttering as true a false writing in order to obtain money from the United States, in violation of 18 U.S.C. § 495. In an opinion dated May 28, 1985, the Court dismissed that indictment as filed in violation of the Speedy Trial Act, specifically 18 U.S.C. § 3161(b).[1] Undaunted, the Government filed a second superceding indictment on June 13, 1985, once again charging a violation of § 641. The venue problem was avoided by charging the defendant with concealing and retaining within this district

---

1. In the May 28 order, I dismissed the superceding indictment, but I reserved for further briefing the question of whether the indictment should be dismissed with or without prejudice under 18 U.S.C. § 3162(a)(1). Upon the Government's agreement to enter a declaration of *nolle prosequi* as to the initial and superceding indictments following disposition of this prosecution, the parties elected not to pursue the question.

the check which he allegedly stole in a borough outside the district.

Defendant moves to dismiss the second superceding indictment on the ground that Congress did not intend the various acts connected with theft and forgery of a Treasury check of value less than $500 to be chargeable as a felony. Section 641,[2] enacted in 1948, forbids the theft of "any record, voucher, money, or thing of value of the United States" and the knowing receipt or concealment of such stolen property. The language of the statute seems broad enough to encompass the acts of which defendant is accused, and defendant does not contest its facial applicability. He contends, however, that 18 U.S.C. § 510, enacted in 1983, was intended to displace all other federal criminal statutes which could conceivably forbid the various acts connected with concealing and fraudulently cashing stolen government checks. Section 510[3] proscribes the forging of endorsements on, *inter alia,* government checks, the passing of falsely endorsed government checks, and the receipt or concealment of stolen or falsely endorsed government checks. If the face value of the check involved is under $500, as here, a violation of § 510 is a misdemeanor. A violation of § 641 is a felony unless, as is not the case here, the value of the stolen property is under $100.

The leading modern case in this area is *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). *Batchelder* concerned two statutes prohibiting the receipt by convicted felons of firearms which have traveled in interstate commerce. Both 18 U.S.C. § 922(h) and 18 U.S.C. § 1202(a) forbid, in similar language, such conduct. Section 922(h) provides a maximum penalty of five years; § 1202(a) provides a maximum sentence of two years. The defendant in *Batchelder* was prosecuted and convicted under § 922(h). He argued on appeal that the maximum permissible sentence was the two years provided by § 1202(a), which was enacted after § 922(h).

After noting the redundancy of the two provisions, the Supreme Court reviewed their histories. Based on the declarations during Congressional debate, the Court

2. The full text of 18 U.S.C. § 641 is as follows:

§ 641. *Public money, property or records*

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

3. The full text of 18 U.S.C. § 510 is as follows:

§ 510. *Forging endorsements on Treasury checks or bonds or securities of the United States.*

(a) Whoever, with intent to defraud—

(1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or

(2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(b) Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States that in fact is stolen or bears a forged or falsely made endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(c) If the face value of the Treasury check or bond or security of the United States or the aggregate face value, if more than one Treasury check or bond or security of the United States, does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000 or imprisonment for not more than one year, or both.

found that the act containing § 1202(a) was enacted as a complement to, rather than a replacement for, the Act which contained § 922(h). Finding no express will to repeal § 922(h), the Court concluded that the two statutes were intended to operate independently. 442 U.S. at 121, 99 S.Ct. at 2202. It then rejected the suggestion that § 1202(a) was implicitly intended to repeal the penalty provision applicable to § 922(h), holding that

> ... it is "not enough to show that the two statutes produce differing results when applied to the same factual situation." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 [96 S.Ct. 1989, 1993, 48 L.Ed.2d 540] (1976). Rather, the legislative intent to repeal must be manifest in the "'positive repugnancy between the provisions.'" *United States v. Borden Co.*, 308 U.S. 188, 199 [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939). In this case, however, the penalty provisions are fully capable of coexisting because they apply to convictions under different statutes.

422 U.S. at 122, 99 S.Ct. at 2203. After finding no constitutional bar to Congress' delegating to the Justice Department the discretion to prosecute under either of two substantively identical statutes providing different penalties, the Court affirmed the conviction under § 922(h). 442 U.S. at 125, 99 S.Ct. at 2205.

The factual parallels between *Batchelder* and this case are obvious and strong. In both, Congress enacted overlapping criminal statutes, setting the maximum penalty in the later-enacted statute lower than the maximum penalty set in the earlier-enacted one. However, the factual differences also cannot be ignored. In *Batchelder*, the two statutory provisions forbid, with minor exceptions, precisely the same behavior. Neither could be said to be more specific or clearly tailored to the crime than the other. By contrast, § 641 is a very general statute dealing with concealment of stolen governmental property, while § 510 explicitly governs the concealment of stolen Treasury checks. The difference is significant, for the very specificity of § 510 tends strongly to imply that, whatever Congress thought an appropriate penalty for the concealment of stolen governmental property in general, it considered the concealment of stolen checks under $500 face value to be a misdemeanor. Indeed, it was the strength of this implication which persuaded Chief Judge McNichols of the Eastern District of Washington to dismiss a felony prosecution for forgery of an endorsement on a Treasury check under $500 in favor of a § 510 misdemeanor charge. *United States v. Jimicum*, 608 F.Supp. 1530, 1534 (E.D. Wash.1985).[4] It is this implication, as bolstered by the prosecution history of § 510, which defendant claims prevents a § 641 indictment in this case.

There is very little law on this topic in the Second Circuit.[5] Several other circuits, however, have rejected the argument that

**4.** *Jimicum* was not a § 641 case, but the felony statute there used to prosecute the forgery, 18 U.S.C. § 495, is also a very general one. It forbids the forgery of a writing for the purpose of obtaining money from the government.

**5.** In *United States v. Ruggiero*, 472 F.2d 599, 606 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973), the Court of Appeals found no constitutional infirmity in the government's prosecution of a defendant for perjury under 18 U.S.C. § 1623, governing false declarations before a grand jury, rather than § 1621, the general perjury statute, despite the applicability of the "two-witness rule" and less severe penalties to the latter. In so doing, the court commented that "where criminal statutes overlap the government is entitled to choose among them provided it does not discriminate against any class of defendants." 472 F.2d at 606. *See also, United States v. Coppola*, 300 F.Supp. 932 (D.Conn.), *aff'd.*, 425 F.2d 660 (2d Cir.1969) (per curiam), in which District Judge Mansfield (as he then was) found no constitutional prohibition against the government's choosing to prosecute under a felony statute conduct which could have fit within a similar misdemeanor statute. 300 F.Supp. at 934. However, in *Coppola* the misdemeanor and felony statutes were not identical; each had elements which the other did not share. The argument that the misdemeanor statute repealed the felony statute would have been difficult to make, for a violation of one was not necessarily a violation of the other. Thus neither *Coppola* nor *Ruggiero*, while perhaps suggestive, is controlling.

a more specific statute of necessity displaces or partially repeals a more general statute. These courts have consistently held that the existence of a specific statute, without more, does not prevent prosecution under a more general statute. In *United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), for example, the government sought to prosecute several individuals for conspiring to file false claims with the government. In addition to indicting the defendants under 18 U.S.C. § 287, which proscribes false claims against the government, the prosecution joined counts covering the same conduct under the general wire and mail fraud statutes. Although noting that the defendants might not be susceptible to punishment under all statutes, the Court held that the government was not limited to charging the crime only under the most specific statute available. 689 F.2d at 1187–88. *See similarly, United States v. Brien*, 617 F.2d 299, 310 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980) (commodities fraud may be prosecuted under mail and wire fraud statutes despite the existence of the more narrowly tailored Commodity Futures Trading Act: "Although the statutes prohibit similar conduct, they operate independently and harmoniously. The government's election to prosecute appellant under the statute which, at the time, provided the more severe penalty, was an exercise of discretion which violated no rights of appellants. [citing *Batchelder*]." 617 F.2d at 310.). To similar effect is *United States v. Mackie*, 681 F.2d 1121, 1123 (9th Cir.1982). Defendants in *Mackie* were accused of selling whole eagles and eagle beaks to undercover agents. This conduct violated not only the Migratory Bird Treaty Act, 16 U.S.C. §§ 703 and 707(b), under which the defendants were prosecuted, but the more specific Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a). In response to the defendants' argument that they could only be prosecuted under the more specific statute, the Ninth Circuit held that in the absence of an affirmative indication in the legislative history that the more specific statute was intended to preempt or partially to repeal the more general statute, the government could proceed under either.

A similar result has obtained even when the more specific statute is a misdemeanor while the more general is a felony. In *United States v. Fern*, 696 F.2d 1269, 1273–74 (11th Cir.1983), defendant was prosecuted for making false statements to an Internal Revenue agent. Such conduct is a misdemeanor under 26 U.S.C. § 7207, which specifically forbids it. Nevertheless, the Court affirmed a felony conviction obtained under 18 U.S.C. § 1001, a more general statute governing the making of false statements to government officials. To similar effect is *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir.1983), in which the government sought to prosecute an attorney for helping a witness to evade service of a subpoena. The district court dismissed felony charges under 18 U.S.C. § 1503, prohibiting obstruction of justice, because of the existence of a more specific misdemeanor statute forbidding interference with a process server. The Court of Appeals reversed. *See also, United States v. Boggs*, 739 F.2d 1376, 1378 n. 2 (8th Cir.1984) (in prosecution of defendant common carrier for granting a rebate of shipping charges, government could charge under either a misdemeanor statute prohibiting such rebates or under a felony statute specifically prohibiting acceptance of prices lower than regulated rates).

These cases demonstrate, in circumstances virtually identical to those of the instant case, that no inference regarding Congressional intent may be drawn from the mere existence of a specific statute carrying a lighter penalty than a more general one. They represent an elaboration of the holding of *Batchelder, supra,* 442 U.S. at 122, 99 S.Ct. at 2203, that no partial repeal will be found from the mere existence of two redundant statutes carrying different penalties unless the two are

positively repugnant—that is, unless they cannot coexist independently.[6]

■ This does not end the inquiry. This general principle of interpretation is not intended to override Congressional intent. As the Ninth Circuit pointed out in *United States v. Mackie, supra,* 681 F.2d at 1123, partial repeal will be found if there is an affirmative indication in the legislative history of either statute that the more specific statute was intended by Congress to override the more general statute when both are applicable. Defendant argues with vigor that such indications are present in the history of § 510.[7]

The history of § 510 is sparse. The statute was apparently first proposed by Senator DeConcini in June, 1981, *see* 127 Cong. Rec. S6448 (daily ed. June 18, 1981), but was not passed until November, 1983. In the relevant Congressional report,[8] § 510 receives only brief comment. S.Rep. No. 225, 98th Cong., 1st Sess. 371–72, *reprinted in* U.S.Code Cong. & Ad.News 3182 (November, 1984). The focus of the comment is on § 510(a), which prohibits the forging of false endorsements on government checks and securities. The conduct covered by § 510(a) was, until its enactment, prosecuted solely under 18 U.S.C. § 495, a felony statute which prohibits the forgery of a "deed … receipt, contract, or

other writing" for the purpose of obtaining money from the government. False endorsements were held to constitute "other writings" as long ago as *Prussian v. United States,* 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931), but the absence of their express mention in § 495 was perceived by Congress as creating gaps in the criminal law prohibiting the wrongful use of government checks. Section 510 was intended to bridge these gaps by expressly prohibiting wrongful conduct which, according to the report, was not prohibited by § 495.[9] The report makes no mention of the sentencing provisions of § 510 or their relationship to those of § 495 or § 641. Indeed, no mention of § 641 appears in the legislative history. Although it is clear from the report that § 510 was intended to bridge gaps in § 495, and implicitly § 641, the report manifests no express intention for § 510 entirely to supplant § 495. The report is simply silent on the question of whether Congress intended for the two statutes to coexist.

Comment on the floors of Congress was barely more extensive. Apparently uncontroversial, § 510 provoked no floor debate. *See, e.g.,* 129 Cong.Rec. S15862–63 (daily ed. November 10, 1983) (remarks of Sen. Stevens). The only legislative state-

---

**6.** Nor are *United States v. Simpson,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) and *United States v. Busic,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), the latter cited by defendant, to the contrary. Both cases concerned the propriety of applying general sentence enhancement provisions to statutes which contained their own enhancement provisions, creating a pyramid of two enhancements above the base sentence. In both cases, the Supreme Court found that the specific enhancement provision preempted the general provision, but in doing so it relied not only upon their general-specific character but also upon express indications in the legislative history that the general statute was not to be applied when the specific statute was available. *See United States v. Mackie,* 681 F.2d 1121, 1123 (9th Cir.1982).

**7.** Defendant's counsel and his student intern are to be commended for the thoroughness with which they have researched the limited legislative history of § 510.

**8.** As defendant notes, the Supreme Court has termed such reports "the authoritative source

for finding the Legislature's intent." *United States v. Garcia,* —— U.S. ——, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1985).

**9.** The full text of the explanatory comment, quoted below, follows a paragraph describing current prosecution strategy under § 495:

> Because section 495 was not drafted to deal with obligations of the United States, many of the variations of offenses involved with the forgery of obligations are not included within that section and cannot otherwise be prosecuted under Federal law. For example, it is currently possible for a thief to steal a Treasury check endorsed by a payee, endorse his own name and obtain the proceeds, and not violate section 495. In addition, it is possible for a thief to steal one or more government checks or bonds from the rightful owner and sell them to a middle man and not violation [sic] section 495.

S.Rep. No. 225, 98th Cong., 1st Sess. 371 (1983), U.S.Code Cong. & Admin.News 1984, p. 3512.

ment which amounts to more than an echo of the comments in Senate Report No. 98–225 is an introductory speech given by Senator DeConcini in 1983. 129 Cong.Rec. S9342-43 (daily ed. June 28, 1983). The Senator first declared that the legislation he was introducing would, "if adopted, correct certain omissions in current law and prescribe penalties for forging endorsements on Treasury checks, ... passing such obligations bearing forged endorsements, or possessing, selling or exchanging such obligations if they are stolen or bear forged endorsements. This legislation will make it possible for the Justice Department to prosecute both forgeries of endorsements and related crimes involving obligations of the United States under one section of the United States Code...." 129 Cong.Rec. at S9342. Defendant argues that this statement demonstrates Congressional intent to make § 510 the exclusive means for prosecuting and punishing these crimes. The argument has some force. However, it can also be argued that the Senator was simply summarizing the effects of the individual provisions of § 510, without meaning to imply that they would thereafter be exclusive. The statute does prescribe penalties, but this does not necessarily mean that they are intended to be the only available penalties. Similarly, to say that § 510 makes it possible for the government to prosecute under one section of the Code is not necessarily to say that the government must do so.

Senator DeConcini proceeded in his remarks to discuss the gaps in § 495 which are also cited in the Senate Report. Then, in discussing penalties, he commented that "[w]hile section 495 is strictly a felony statute, the proposed section 510 also allows for prosecution as a misdemeanor for those obligations which do not exceed $500. This will greatly enhance the judicial process since the great majority of such cases are under the $500 amount." 129 Cong.Rec. at S9342. It seems significant that the Senator commented that § 510 "also allows" a misdemeanor prosecution. The phrase suggests an alternative—that is, that § 510 allows, but does not require, a misdemean-

or prosecution. The alternative, of course, would be a felony prosecution under § 495. Further, although the purported benefit to the judicial process, the ease of prosecuting misdemeanors as opposed to felonies, is greater. if all such cases must be brought as misdemeanors, the goal is not necessarily undercut by giving the prosecutor an option. This would permit the Justice Department to target its expenditure of resources, and thus that of the judiciary, at the most serious offenders. Either way, the judicial process is "enhanced."

Finally, Senator DeConcini addressed in more detail the drafters' aims in creating a misdemeanor statute:

According to GAO, Secret Service and U.S. attorneys' offices throughout the country generally agreed that various benefits would result if a Federal misdemeanor forgery statute were enacted, including the following specific benefits:

First. Result in more forgers being prosecuted by U.S. attorneys;

Second. Eliminate the need for creating "legal fictions" which result from prosecuting under misdemeanor laws that may not directly address the forgery offenses;

Third. Increase plea negotiation flexibility and guilty pleas;

Fourth. Increase use of the U.S. magistrates in check forgery cases and reduce the number of felony trials; thereby reducing the burden on the Federal district courts.

Fifth. Provide more accurate conviction records which may be useful in future prosecutions of repeat offenders; and

Sixth. Provide a realistic penalty structure.

129 Cong.Rec. at S9342.

The last purported benefit supports defendant's position. By stating that misdemeanor treatment is a "realistic" penalty for forgery of an endorsement on a check under $500, it can be argued that the Senator was implicitly indicating that felony treatment permits an excessively harsh

punishment.[10] On the other hand, the third and fifth listed benefits provide talking points for the government. It is difficult to see how the creation of a misdemeanor statute will increase plea negotiation "flexibility" if it becomes the exclusive penalty. Flexibility implies choice of action; surely it is increased most effectively by permitting the misdemeanor statute to exist side-by-side with the preexisting felony statute. The fifth benefit perhaps less clearly weighs in the government's favor. Presumably the availability of a misdemeanor statute will provide more accurate conviction records because the government will prosecute known cases of forgery which it currently deems insufficiently serious to justify felony prosecution. Arguably, at least, the importance of accurate conviction records is that they would permit the government to ascertain repeat offenders and seek more severe punishment for them by prosecuting them as felons. If repeat offenders continue to be subject only to misdemeanor treatment, the range of punishment which can be imposed upon them is arguably so narrow as to make their identification of small practical significance.

This is the extent of the relevant legislative history. Senator DeConcini did not expressly state whether he viewed the statute as replacing all others which have historically governed forged endorsements. Certain aspects of his testimony support this view; other aspects seem inconsistent with it. In view of presumption against implicit repeal, *Batchelder, supra,* 442 U.S. at 122, 99 S.Ct. at 2203, however, it is appropriate to require an express or "affirmative" indication of intent to repeal. *Mackie,* 681 F.2d at 1123. No such indication is present here. As a result, the Government may avail itself of any applicable statute. Since it appears to be uncontested that § 641 prohibits the acts alleged, the motion to dismiss the indictment must fail.

It is SO ORDERED.

___

**10.** Of course, it could also be argued that by terming the new penalty structure "realistic" the Senator merely meant to indicate that felony treatment is not appropriate for every forgery case involving a check under $500.