**James A. EDWARDS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. H 85–1105.**

United States District Court, N.D. Indiana, Hammond Division.

July 10, 1986.

Scott L. King, Gary, Ind., James A. Edwards, Duluth, Minn., for petitioner.

John F. Hoehner, Asst. U.S. Atty., Hammond, Ind., for respondent.

## ORDER

MOODY, District Judge.

This matter is before the court on Petitioner's Objections to the Magistrate's Recommendations, filed with this court on May 28, 1986. The Petitioner's Objections were prepared pursuant to Fed.R.Civ.P. 72(b) and the court now reviews de novo the Magistrate's recommendations. *Delgado v. Bowman*, 782 F.2d 79, 82 (7th Cir.1986).

The Report and Recommendation of the United States Magistrate was filed on May 15, 1986 in response to a challenge by the petitioner as to the validity of a sentence imposed by this court for petitioner's violations of 18 U.S.C. § 495. The Magistrate has recommended that the petitioner's Motion to Vacate be denied. The petitioner now objects to the following conclusions made by the Magistrate in his Report and Recommendation: (1) that *United States v. Bennerson,* 616 F.Supp. 167 (D.C.N.Y. 1985) correctly interpreted the relationship between 18 U.S.C. § 495 and § 510(c); (2) that Section 510 did not implicitly repeal section 495; and (3) that the legislative history of section 510(c) demonstrates a Congressional intent to supplement rather than repeal section 495.

Based on the reasons set forth below, the court finds that the Magistrate's findings are correct in all respects and that the recommendation submitted by the Magistrate is appropriate. Therefore the Petitioner's Objections are hereby DENIED.

### I.

The charging date of the offenses was November 3, 1983. On that date, 18 U.S.C. § 495 was in effect and provided:

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in reltation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

On November 14, 1983, 18 U.S.C. § 510 went into effect and provided:

(a) Whoever with intent to defraud—

(1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or

(2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

\* \* \* \* \* \*

(c) If the face value of the Treasury check or bond or security of the United States or the aggregate face value, if more than one Treasury check or bond or security of the United States, does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000, or imprisonment for not more than one year, or both.

On September 20, 1984, this court accepted a plea agreement entered into between petitioner and the government and sentenced petitioner to a total of ten (10) years incarceration. Therefore, section 510(c) was not in effect on the date of the offense but was in effect on the date of sentencing. Petitioner argues that because the Treasury checks involved in his offenses were less than $500.00 that his sentencing should have been imposed under section 510(c) rather than section 495.[1]

■ The petitioner's three objections are based on one issue: whether section 510(c) implicitly repealed section 495. It is undisputed that nothing in section 510 expressly repeals or supersedes section 495. Therefore, any repeal would be by implication. The intent to repeal must be clearly evident from legislative history, since "repeals by implication are not favored". *Watt v. Alaska*, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).

## II.

The issue of whether section 510 repealed, implicitly or otherwise, any or all of section 495 appears to be a question of first impression in this circuit. However, two recent district court decisions discussed this very issue and reached opposite conclusions. The first, *United States v. Jimicum*, 608 F.Supp. 1530 (D.C.Wash.1985), found that section 510(c) implicitly repealed section 495. In the second, *United States v. Bennerson*, 616 F.Supp. 167 (D.C.N.Y. 1985), the court concluded that section 510 was designed to supplement rather than to supersede section 495.

### A.

In holding that section 510 implicitly repealed section 495, the court in *Jimicum* stated that when two statutes cannot coexist, the more specific and recent takes precedence over the more general and earlier. *Jimicum*, 608 F.Supp. at 1532. Because it is well settled that legislative intent to repeal a statute must be clear, the *Jimicum* court tried to present affirmative evidence of legislative intent by discussing the legislative histories of sections 495 and 510.

In discussing the history of section 495, the court stated that Congress expressed an intention to protect the public treasury from fraud by false writings in general. It has been settled for some fifty years that government checks are "other writings" within the meaning of section 495. *Id.*, (citing *Prussian v. United States*, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931)).

The *Jimicum* court also discussed the legislative history of section 510. When effecting section 510, Congress looked again at the problem of false writings from a broad perspective, enhancing the penalties for violations involving more than $500, and decreasing the penalties for violations involving $500 or less. The court reasoned that because Congress spoke spe-

---

1. Both Edwards and the government appear to agree that because Section 510(c) was an ameliorative statute, the *ex post facto* clause would not have prevented its application to Edwards. See generally: *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

cifically of treasury checks, and because the treatment on the treasury-check issue was comprehensive in section 510, that section 510 should be the sole charging statute for such offenses. The court stated that because of this history, Congress did not intend for section 495 and section 510 to coexist. *Id.* at 1534. Therefore section 510, the more specific and recent, should take precedence over section 495. *Id.* at 1536.

The *Jimicum* court relied heavily upon the general-versus-specific distinction between these two sections. *Id.* at 1532–34. The difference is significant, for the very specificity of section 510 tends to imply that Congress considered the concealment of stolen Treasury checks under $500 to be a misdemeanor.

However, the *Jimicum* court recognized that there are very real differences in the scope of the two statutes. The court quoted from the legislative history as follows:

> Because section 495 was not drafted to deal with obligations of the United States, many of the variations of offenses involved with the forgery of obligations are not included within that section and cannot otherwise be prosecuted under Federal law. For example, it is currently possible for a thief to steal a Treasury check endorsed by a payee, endorse his own name and obtain the proceeds and not violate section 495. In addition, it is possible for a thief to steal one or more government checks or bonds from the rightful owner and sell them to a middle man and not violation [sic] section 495.

> S.Rep. No. 225, 98th Cong., 1st Sess. 371 (1983), U.S. Code Cong. & Admin. News 1984, 3182, page 3512.

This passage demonstrates that the two statutes have separate and distinct areas of coverage, apart from their common coverage of Treasury checks. Therefore, not only is it possible for the statutes to coexist, but it is necessary for them to coexist in order to effectuate the intent of Congress in proscribing those separate and distinct areas of coverage in each statute respectively.

### B.

*United States v. Bennerson* is a better reasoned opinion on the issue of implicit repeal with regards to section 510 and a more general statute. 616 F.Supp. 167. Although *Bennerson* involves section 510 and 18 U.S.C. § 641, the court discusses the relationship between sections 510 and 495 at length. In *Bennerson*, the court held that section 510 did not implicitly repeal the general statute. The court stated that no partial repeal will be found from the mere existence of two redundant statutes carrying different penalties unless the two are positively repugnant; that is, unless they cannot coexist independently. *Id.* at 174–175, (citing *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979)). The *Bennerson* court recognized that Congressional intent may not be inferred from the mere existence of a specific statute carrying a lighter penalty than a more general one, and therefore the court turned to the legislative history of section 510 to determine legislative intent. *Id.* at 174.

The conduct covered by Section 510(a) had previously been prosecuted solely under section 495, the felony statute which prohibits the forgery of a "deed ... receipt, contract or other writing" for the purpose of obtaining money from the government. False endorsements on government checks and securities were held to be "other writings," but Congress saw this as creating gaps in the criminal law prohibiting the wrongful use of government checks. *Id.*, (citing *Prussian v. United States*, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931)). The *Bennerson* court stated that the Congressional Report on section 510 clearly demonstrates that section 510 was intended to bridge the gaps in section 495, but the report manifests no intention for section 510 to entirely supplant section 495. The report is simply silent on the question of whether Congress intended for the two statutes to coexist.

*Id.* at 175. The only other source of section 510's history is a speech by Senator DeConcini who proposed section 510. In it, he did not expressly state whether he viewed the statute as replacing all others which have historically governed forged endorsements.

In addressing the general-versus-specific distinction between these two statutes, the *Bennerson* court noted that several circuits have rejected the argument that a more specific statute of necessity displaces or partially repeals a more general statute. *Id.* at 173–74. *See United States v. Computer Sciences Corp.*, 689 F.2d 1181 (4th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *United States v. Brien*, 617 F.2d 299, 310 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980); *United States v. Boggs*, 739 F.2d 1376, 1378 n. 2 (8th Cir. 1984); *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir.1983); *United States v. Fern*, 696 F.2d 1269, 1273–74 (11th Cir.1983); *United States v. Mackie*, 681 F.2d 1121, 1123 (9th Cir.1982). For a more detailed discussion of these cases, see *Bennerson*, 616 F.Supp. at 174.

These cases demonstrate that no inference regarding Congressional intent may be drawn from the mere existence of a specific statute carrying a lighter penalty than a more general one. "They represent an elaboration of the holding of *Batchelder*, ... 422 U.S. at 122, 99 S.Ct. at 2203 ... that no partial repeal will be found from the mere existence of two redundant statutes carrying different penalties unless the two are positively repugnant—that is, unless they cannot coexist independently." 616 F.Supp. at 174–75.

Because of the presumption against implicit repeals, it is appropriate to require an express or "affirmative indication of intent to repeal." *Id.* at 616 F.Supp. 177 (citing *United States v. Mackie*, 681 F.2d 1121, 1123 (9th Cir.1982)). Neither the history of section 510, nor the language of the statute itself serves as the required affirmative indicator of intent to repeal.

Therefore, section 510 does not implicitly repeal section 495 but instead merely supplements it. If an act is prohibited by more than one criminal statute, the government has the discretion to determine which statute should be applied in that case. *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).

### III.

Although the Seventh Circuit has not ruled directly on the implicit repeal of a general statute by a more specific one, it has set up guidelines in *County of Cook v. Midcon Corp.*, 773 F.2d 892 (1985), to deal with repeals. In *Midcon*, the plaintiff alleged that the defendants had violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO") by conducting their affairs through a pattern of racketeering. The case dealt with whether RICO implicitly created an exception to 28 U.S.C. § 1738, so that state preclusion law is not determinative. The court reasoned that neither RICO's language nor its legislative history clearly manifests an intention to depart from section 1738.

The court stated that two well-settled categories of repeal by implication existed: (1) where provisions in two acts are in irreconcilable conflict, so that to the extent they conflict the later act partially repeals the earlier one, and (2) where the later act covers the whole subject of the earlier one, so that the later act completely repeals the earlier act. In either case, "the intention of the legislature to repeal must be clear and manifest." *Id.* (citing *Radzonower v. Touche Ross and Company*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976)).

In the instant case, there is no "irreconcilable conflict" between the provisions of section 495 and 510. As the histories of the two statutes illustrate, sections 495 and 510 must coexist, because Congress neither intended nor expressed in section 510's language a full or partial repeal, and because

each statute covers subject matter unique to it. As stated previously, when statutes are able to coexist, the government may choose to follow either one. *Ball v. United States,* 470 U.S. 856 (1985). Because sections 495 and 510 can coexist and the government is granted discretion in selecting which statute to apply, the statutes are not in "irreconcilable conflict".

Even more certainly sections 495 and 510 do not fall into the second category provided by *Midcon* where the later act covers the whole subject of the earlier one. The later statute, section 510, deals specifically with Treasury checks which is only one subsection of the general forgery statute, section 495. Therefore, section 510 obviously does not completely repeal Section 495 by covering the whole subject matter of the earlier statute. Moreover, there is nothing in the language of section 510 to suggest that Congress intended to modify or supersede section 495 by section 510. Because the statute does not make such a legislative intent clear, section 510 does not repeal, implicitly or otherwise, section 495.

## CONCLUSION

Section 510 does not explicitly repeal section 495 and therefore if any repeal exists, it must be by implication. Because implicit repeals are not favored, legislative intent to repeal must be clear and manifest. The histories of sections 495 and 510 have revealed that Congress did not intend for section 510 to repeal section 495, but only to supplement it. Without an irreconcilable conflict in their provisions, sections 495 and 510 are capable of and do coexist, and the government has the constitutional discretion to choose which to apply. Therefore, the Magistrate's findings were correct in all respects. Based on the foregoing reasons, it is hereby ORDERED that the Petitioner's Objections be OVERRULED and the court hereby ACCEPTS the Report and Recommendation of the Magistrate. The Motion to Vacate, Set Aside, or Correct Sentence is hereby DENIED.