805 F.2d 457
 UNITED STATES of America, Appellee,
v.
Isaac JACKSON and Peter Bennerson, Defendants-Appellants.
 Nos. 1427, 1428, Dockets 86-1132, 86-1161.
 United States Court of Appeals,
Second Circuit.
 Argued June 19, 1986.
Decided Nov. 10, 1986.
 
 Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Unit, New York City, for defendants-appellants.
 Adam S. Hoffinger, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, of counsel), for appellee.
 Before MESKILL, KEARSE, and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appeal from a judgment of the United States District Court for the Southern District of New York, Ward, Judge, entered March 13, 1986, convicting appellant, Isaac Jackson, of conversion of a United States Treasury check in an amount under $500 in violation of 18 U.S.C. Sec. 641, and from a judgment of the United States District Court for the Southern District of New York, Haight, Judge, entered April 1, 1986, convicting appellant, Peter Bennerson, of a similar charge.
 
 
 2
 Appellants each maintain that they were improperly charged with a felony under 18 U.S.C. Sec. 641, a general statute dealing with conversion of United States property, because a more recently enacted statute, 18 U.S.C. Sec. 510, which deals specifically with offenses relating to Treasury checks, repealed Sec. 641 insofar as their conduct was concerned and made their conduct punishable only as a misdemeanor.
 
 
 3
 The district judges, Judge Ward in an oral decision and Judge Haight in a written opinion, United States v. Bennerson, 616 F.Supp. 167 (S.D.N.Y.1985), ruled that Congress in enacting Sec. 510 did not intend to repeal Sec. 641 and thus the government could elect to charge a defendant under either statute.
 
 
 4
 We hold, in substantial agreement with Judge Haight's opinion, that the two statutory provisions in question, Secs. 641 and 510, may coexist and therefore a prosecutor has discretion to determine under which statute a defendant will be charged.
 
 
 5
 We therefore affirm the judgments of conviction.
 
 BACKGROUND
 
 6
 The essential facts herein are not in dispute and were stipulated at the trial of each defendant. Those facts showed that appellant, Isaac Jackson, forged the endorsement of a United States Treasury check in the amount of $347.32 payable to another and attempted to cash it on October 2, 1985. Following his arrest, Jackson admitted that he received the check from a friend, that he endorsed it and attempted to cash it, and that he knew that the check did not belong to him and that what he was doing was wrong, but that he needed the $147 he was to receive for cashing the check. Jackson was indicted on October 16, 1985, and charged with one count of receiving a United States Treasury check, knowing it to have been stolen, with the intent to convert it to his own use in violation of 18 U.S.C. Sec. 641. Jackson moved to dismiss the indictment on the ground that he should have been charged with a misdemeanor under 18 U.S.C. Sec. 510, rather than a felony under Sec. 641. Judge Ward denied the motion from the bench finding no "support for defendant's argument that Congress evidenced an express or implied affirmative intention to repeal Section 641 with respect to checks in amounts less than $500." After a bench trial, Jackson was found guilty as charged and was subsequently sentenced to an eighteen-month prison term.
 
 
 7
 Appellant Peter Bennerson also attempted on December 3, 1984, without authorization, to cash a United States Treasury check payable to a third party in the amount of $274.02. After being taken into custody, Bennerson stated that he found the check in his mailbox, that he took the check because he was in debt, that he secured a blank identification document and filled in the payee's name, and that he attempted to cash the check. Bennerson was indicted on June 13, 1985, and charged with a violation of Sec. 641.[1] Bennerson also moved to have the indictment dismissed on the ground that he should have been charged with a misdemeanor under Sec. 510 instead of a felony under Sec. 641. Judge Haight denied the motion and, following a bench trial in which Bennerson was found guilty, sentenced him to a six-month prison term, suspended its execution, and placed him on two years' probation.
 
 
 8
 Jackson's and Bennerson's appeals were consolidated because they involved the same issue, namely, whether the enactment of Sec. 510 under which appellants' offenses would be misdemeanors, repealed that portion of Sec. 641 under which their offenses were denominated as felonies.
 
 DISCUSSION
 
 9
 Appellants concede that their conduct in this case falls within the purview of both 18 U.S.C. Sec. 641 and 18 U.S.C. Sec. 510. Section 641,[2] enacted in 1948, does not explicitly address the crime of forging endorsements on United States Treasury checks or passing Treasury checks with forged endorsements. Rather, that section prohibits in general terms the conversion of "any record, voucher, money, or thing of value of the United States." However, this broad language has been construed to include United States Treasury checks. See, e.g., United States v. Richardson, 755 F.2d 685, 686 (8th Cir.1985); United States v. Wyatt, 737 F.2d 1499, 1500 (9th Cir.1984). A violation of Sec. 641 is a felony unless the value of the stolen property is under $100.
 
 
 10
 On the other hand, Sec. 510,[3] enacted in 1983, explicitly proscribes forging endorsements on Treasury checks, passing of falsely endorsed Treasury checks, and receipt or concealment of stolen or falsely endorsed Treasury checks. A violation of Sec. 510 is a misdemeanor as long as the value of the check does not exceed $500.
 
 
 11
 We are thus confronted with a situation where two statutes cover the same conduct but provide different punishments. Therefore, we are called upon to resolve a question of statutory construction as to the relationship between two overlapping statutes. Consequently, our inquiry must focus on ascertaining congressional intent in enacting the later statute.
 
 Implied Repeal
 
 12
 The first question we must resolve is whether an inference can be drawn that Congress in enacting a new specific statute implicitly intended to repeal an overlapping portion of an older more general statute. We conclude, as did the district court below, that no inference regarding congressional intent may be drawn from the mere existence of a specific statute carrying a lighter penalty than a more general one.
 
 
 13
 We are aided in reaching this conclusion by the holding of the Supreme Court in United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). In Batchelder, the defendant was convicted under 18 U.S.C. Sec. 922(h), a statute that prohibited receipt by convicted felons of firearms which have traveled in interstate commerce. That statute carried a maximum penalty of five years' imprisonment. However, 18 U.S.C.App. Sec. 1202(a), enacted after Sec. 922(h), also prohibited the same conduct and carried only a two year maximum sentence. The Court, in holding that the two statutes could coexist, rejected the argument that the later statute implicitly repealed the penalty provision of the earlier statute and said:
 
 
 14
 it is "not enough to show that the two statutes produce differing results when applied to the same factual situation." Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 [96 S.Ct. 1989, 1993, 48 L.Ed.2d 540] (1976). Rather, the legislative intent to repeal must be manifest in the " 'positive repugnancy between the provisions.' " United States v. Borden Co., 308 U.S. 188, 199 [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939).
 
 
 15
 442 U.S. at 122, 99 S.Ct. at 2203.
 
 
 16
 While it is true that Batchelder is not dispositive of the instant case because in Batchelder neither statute could be said to prohibit the conduct more specifically than the other, other circuits have relied upon Batchelder to hold that a prosecutor has authority to proceed under either of two overlapping statutes, even when the more recent statute is far more specific in proscribing the conduct at issue, so long as there is no express congressional intent to the contrary. See United States v. Fern, 696 F.2d 1269, 1273-74 (11th Cir.1983) (upholding conviction under 18 U.S.C. Sec. 1001 for false statement to revenue agent despite arguably applicable specific prohibition of false statements to the Internal Revenue Service in 26 U.S.C. Sec. 7207); United States v. Mackie, 681 F.2d 1121, 1122 (9th Cir.1982) (upholding convictions under Migratory Bird Treaty Act, 16 U.S.C. Secs. 703 & 707(b) despite more specific and later enacted Bald and Golden Eagle Protection Act, 16 U.S.C. Sec. 668(a)); United States v. Anderez, 661 F.2d 404, 407 & n. 9 (5th Cir.1981) (upholding conviction under 18 U.S.C. Sec. 1001 despite more specific and later enacted prohibition under Currency and Foreign Transactions Reporting Act, 31 U.S.C. Secs. 1101 & 1058); United States v. Brien, 617 F.2d 299, 309-11 (1st Cir.) (more specific anti-fraud provisions of Commodity Futures Trading Act, 7 U.S.C. Sec. 6o, did not impliedly repeal pertinent portions of pre-existing general mail and wire fraud statutes, 18 U.S.C. Secs. 1341 & 1343), cert. denied, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). See also United States v. Schaffner, 715 F.2d 1099, 1102 (6th Cir.1983); United States v. Computer Sciences Corp., 689 F.2d 1181, 1185-87 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); United States v. Adler, 623 F.2d 1287, 1290 (8th Cir.1980).
 
 
 17
 In interpreting the issue presented herein, we draw upon this line of cases that relies on Batchelder to hold that absent evidence of congressional intent to repeal, when a new statute overlaps a portion of an older one, the two statutes should be permitted to coexist unless the two are mutually exclusive. Herein, both Sec. 510 and Sec. 641 can coexist. They merely provide two different alternative penalties either of which a prosecutor may select and charge for the same conduct. We perceive of no presumption that arises suggesting that when Congress enacted Sec. 510 it intended to repeal that portion of Sec. 641 that overlaps Sec. 510.
 
 
 18
 Our decision in United States v. Hernandez, 730 F.2d 895 (2d Cir.1984), upon which appellants rely to overcome the holdings in the above line of cases, is distinguishable from the instant case. In Hernandez, we held that 18 U.S.C. Sec. 1512, a specific victim and witness protection statute, overrode the more general obstruction of justice statute, to wit, 18 U.S.C. Sec. 1503. However, in so holding, we found that when Congress enacted Sec. 1512, it also amended Sec. 1503 and actually deleted portions relating to witness harassment. Moreover, a review of the legislative history of Sec. 1512 revealed that it was intended to supplant Sec. 1503. In this case, Sec. 641 was neither amended nor deleted at the time Sec. 510 was enacted; also, as shown below, the legislative history does not contain an express statement of intent to repeal.[4]
 
 
 19
 Our conclusion that the mere existence of a later enacted, specific statute does not implicitly repeal the overlapping portion of an earlier, general statute is premised upon the absence of explicit congressional intent to repeal. Therefore, our inquiry herein must include a review of pertinent legislative history for any affirmative indications that Congress intended Sec. 510 to be the sole provision under which Treasury check offenses would be prosecuted. Absent such an affirmative indication, we would not conclude that the later statute repealed the earlier one. See Mackie, 681 F.2d at 1123.
 
 Legislative History of Section 510
 
 20
 Appellants have presented bits and pieces of the legislative history of Sec. 510 as their basis for concluding that Congress intended to repeal or preempt Sec. 641. However, we are not persuaded by appellants' arguments. Whatever evidence exists as to congressional intent regarding the relationship between Secs. 510 and 641 manifests no affirmative intent to repeal Sec. 641. In fact, the limited legislative history in our view supports the conclusion that the statutes were meant to coexist.
 
 
 21
 The "authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill" which contains the enacted statute. Garcia v. United States, 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984). In turning first to the relevant Senate committee report,[5] we find no mention whatsoever of Sec. 641. See S.Rep. No. 225, 98th Cong., 1st Sess. 371-72, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3512-13. There is no indication whether Congress intended Sec. 510 to be a supplement to Sec. 641 or to be the exclusive criminal remedy for the theft or forgery of Treasury checks. As the district court aptly put it "[t]he report is simply silent on the question of whether Congress intended for the two statutes to coexist." Bennerson, 616 F.Supp. at 175.
 
 
 22
 What can be found in the Senate report is a discussion of the relationship between Sec. 510 and 18 U.S.C. Sec. 495. Section 495,[6] enacted in 1948, is a broadly worded felony statute which prohibits the forgery of writings for the purpose of obtaining from the United States any sum of money. It does not explicitly encompass offenses related to Treasury checks, but false endorsements on Treasury checks have long been prosecuted under Sec. 495 and its predecessor. See Prussian v. United States, 282 U.S. 675, 679-80, 51 S.Ct. 223, 225, 75 L.Ed. 610 (1931). Sensing gaps in the wording of Sec. 495 by which certain conduct such as stealing and cashing an already endorsed Treasury check would go unpunished, Congress enacted Sec. 510 to close loopholes in Sec. 495. See S.Rep. No. 225, 98th Cong., 1st Sess. 371, reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3512. A Congressional intent to bridge gaps in an earlier statute by enacting a later statute is not indicative of intent to supersede the earlier statute. In fact, after reviewing the legislative history of Sec. 510, the Ninth Circuit recently held that no repeal of Sec. 495, specific or implied, was intended by the enactment of Sec. 510. United States v. Edmonson, 792 F.2d 1492, 1498 (9th Cir.1986) (government has election to charge under either Sec. 495 or Sec. 510), rev'g United States v. Jimicum, 608 F.Supp. 1530 (E.D.Wash.1985).
 
 
 23
 Although not mentioned in the committee report, Sec. 641 bears a relationship to Sec. 510 that is similar to the relationship between Secs. 495 and 510; Sec. 510(a) deals with forged instruments as does Sec. 495; Sec. 510(b) deals with stolen instruments as does Sec. 641. By implication, if Sec. 510(a) was intended to bridge gaps in Sec. 495 as it relates to Treasury checks, it is not at all unreasonable to conclude that Sec. 510(b) must have been intended to bridge gaps in Sec. 641 as it relates to Treasury checks. Certainly, there is nothing in the committee report to contradict a conclusion that Sec. 510 was created to supplement Sec. 641, not to exclude it.
 
 
 24
 Appellants rely heavily upon comments made in an introductory speech by Senator DeConcini, the sponsor of the bill that contained Sec. 510. Generally, "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." Chrysler Corp. v. Brown, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). However, in the absence of other legislative history, we have in the past considered the views of a sponsor of legislation as indicative of congressional intent. See Carlin Communications, Inc. v. F.C.C., 749 F.2d 113, 116 n. 7 (2d Cir.1984) (views of sponsor are not conclusive but are entitled to considerable weight, particularly in the absence of a committee report); Murphy v. Empire of America, FSA, 746 F.2d 931, 935 (2d Cir.1984) (isolated remarks are entitled to little or no weight unless there is no official legislative history on the enactment). Here, although there is a committee report regarding Sec. 510, it makes no mention of Sec. 641; still, we do not think it inappropriate to consider the sponsor's remarks in our efforts to fathom congressional intent. Nevertheless, having considered those remarks, we find them to be inconclusive.
 
 
 25
 First, appellants point to the Senator's declaration that Sec. 510 would "correct certain omissions in current law and prescribe penalties for forging endorsements on Treasury checks, ... passing such obligations bearing forged endorsements, or possessing, selling, or exchanging such obligations, if they are stolen or bear forged endorsements. This legislation will make it possible for the Justice Department to prosecute both forgeries of endorsements and related crimes involving obligations of the United States under one section of the United States Code." 129 Cong.Rec. S9342 (daily ed. June 28, 1983) (statement of Sen. DeConcini) (emphasis added). Admittedly, the reference to prosecution "under one section" could imply an intent that the new section be the exclusive section governing Treasury check offenses. However, as the district judge concluded, the fact that it is "possible for the government to prosecute under one section of the Code is not necessarily to say that the government must do so." Bennerson, 616 F.Supp. at 176.
 
 
 26
 Second, appellants rely upon Senator DeConcini's language in discussing the new penalty structure. In discussing the penalties, he said:
 
 
 27
 [w]hile section 495 is strictly a felony statute, the proposed section 510 also allows for prosecution as a misdemeanor for those obligations which do not exceed $500. This will greatly enhance the judicial process since the great majority of such cases are under the $500 amount.
 
 
 28
 129 Cong.Rec. S9342 (daily ed. June 28, 1983) (statement of Sen. DeConcini) (emphasis added).
 
 
 29
 Appellants interpret the phrase "also allows" as referring to the two-tiered penalty system contained in Sec. 510. They contend that Senator DeConcini meant to say that unlike Sec. 495 which has only a felony tier, Sec. 510 would have two tiers, a felony level and a misdemeanor level. Appellants argue that this reading, taken together with the Senator's statement that enactment of Sec. 510 would allow for prosecuting all cases involving Treasury checks under one section, implies an intent that Sec. 510 be the exclusive section for prosecuting Treasury check crimes.
 
 
 30
 While appellants' reading of the "also allows" phrase is reasonable, Judge Haight's interpretation is equally sound. Judge Haight understood the phrase to suggest "an alternative--that is, that Sec. 510 allows, but does not require, a misdemeanor prosecution." In other words, what Senator DeConcini meant was that an offender who passes a forged Treasury check under $500 could be charged with either a felony under Sec. 495 or a misdemeanor under Sec. 510. Faced with two contradictory yet equally plausible interpretations of the Senator's statement we must look for other evidence of congressional intent.
 
 
 31
 Senator DeConcini, in his remarks before the Senate, listed six legislative aims that would be promoted by the enactment of Sec. 510.[7] We believe that scrutiny of those goals supports the conclusion that Congress did not intend to repeal Sec. 641 but rather to supplement it.
 
 
 32
 The first and second aims, those of prosecuting more forgers and avoiding the "legal fictions" that had resulted from attempts to prosecute less important cases as misdemeanors under other statutes would be equally well served by either allowing the two statutes to coexist or by having Sec. 510 repeal Sec. 641.
 
 
 33
 The third goal, to increase plea negotiation flexibility, clearly points toward allowing the two statutes to coexist. As Judge Haight reasoned, there could be no flexibility for prosecutions involving checks under $500 if the misdemeanor penalty were the exclusive penalty. "Flexibility implies choice of action; surely it is increased most effectively by permitting the misdemeanor statute to exist side-by-side with the preexisting felony statute." Bennerson, 616 F.Supp. at 177. Appellants' argument that the third benefit refers to plea bargaining in cases involving sums over $500 because Sec. 510 has a two-tiered penalty structure is not persuasive. There is no flexibility in cases of checks over $500 whether Sec. 510 is the exclusive statute or coexists with Sec. 641, since the penalty under both sections with respect to such checks is the same. Moreover, as appellee points out, Sec. 510 provides additional flexibility for cases involving sums below $500 only if it is treated as supplemental in nature.
 
 
 34
 The fourth aim, to increase the use of U.S. magistrates in check forgery cases and reduce the felony trial burden on federal district courts, can be subsumed under the third aim. One way to reduce the burden on courts is through prosecutorial discretion. Such discretion is best served by retaining the flexibility of allowing the government to determine under which statute to proceed. The result suggested by appellants, to lower the burden on the courts by requiring that all cases involving Treasury checks less than $500 be treated as misdemeanors, is not clearly supported by the language of the fourth aim.
 
 
 35
 The fifth aim, to provide more accurate conviction records which may be useful in future prosecutions of repeat offenders is only somewhat helpful in shedding light on whether Congress intended to repeal Sec. 641. As Judge Haight reasoned, accurate conviction records are only important if repeat offenders can be subject to more severe punishment as felons. If repeat offenders as to checks for under $500 are subject only to misdemeanor prosecutions, there is little need for identifying repeat offenders through accurate conviction records. Id.
 
 
 36
 The sixth and last aim of providing a realistic penalty structure provides us with little guidance as to Congress' intent. This objective is susceptible of different interpretations. Judge Haight thought that this aim supported appellants' view and that by "realistic" Senator DeConcini meant to imply that felony treatment for Treasury check offenses was an excessively harsh punishment. Id. at 176-77. However, Judge Haight recognized that this reading is not 'etched in stone' and it could also be argued that the Senator "meant to indicate that felony treatment is not appropriate for every forgery case involving a check under $500." Id. at 177 n. 10. Appellee provides yet another reading and argues in support of its position that a "realistic penalty structure" implies giving the government discretion in appropriate cases to prosecute Treasury check crimes either as felonies or as misdemeanors. The only thing that we can say for certain regarding this last aim is that it cannot be said that the coexistence of the two statutes provides an unrealistic penalty structure.
 
 
 37
 In sum, our review of the legislative history of Sec. 510 elicits no clear, affirmative indication of congressional intent to repeal Sec. 641. The relevant committee report is silent as to Sec. 641. It can be assumed that Sec. 510 was intended to fill legislative loopholes in Sec. 641 as is the case with Sec. 495. Senator DeConcini's remarks in sponsoring the legislation are inconclusive. Moreover, of the six aims articulated by the Senator that would be served by the enactment of Sec. 510, two point toward the coexistence of sections 510 and 641. The others, while not directly supporting this result, are consistent with it. In view of the lack of any express or affirmative indications of congressional intent in the legislative history of Sec. 510 to repeal Sec. 641, we hold that Sec. 641 remains viable and the government can prosecute Treasury check offenses under either Sec. 641 or Sec. 510.
 
 Rule of Lenity
 
 38
 Appellants' final argument is that we should invoke the rule of lenity in their favor to resolve the question as to which statute applies. This rule requires a court faced with an ambiguous criminal statute to resolve the ambiguity in favor of lenity. Batchelder, 442 U.S. at 121, 99 S.Ct. at 2202. A court should " 'not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' " Simpson v. United States, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978) (quoting Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). Here however, there is no ambiguity in either Sec. 641 or Sec. 510; each plainly applies to appellants' criminal acts. We are not called upon to interpret either statute, only the relationship between them. In such an instance the rule of lenity is not apposite. See Batchelder, 442 U.S. at 121, 99 S.Ct. at 2202; Edmonson, 792 F.2d at 1498.
 
 
 39
 The judgments of conviction are affirmed.
 
 
 
 [1]
 Bennerson was originally indicted on December 21, 1984 and charged in two counts with violating 18 U.S.C. Sec. 641 and 18 U.S.C. Sec. 510. However, because of venue problems involving the Sec. 641 count as charged, the government filed the first superseding indictment on March 21, 1985 charging Bennerson with a one count violation of Sec. 495. This indictment was dismissed on speedy trial grounds, United States v. Bennerson, 616 F.Supp. 167 (S.D.N.Y.1985); a second superseding indictment charging only a violation of Sec. 641 was filed on June 13, 1985
 
 
 [2]
 The full text of 18 U.S.C. Sec. 641 is as follows:
 Sec. 641. Public money, property or records
 Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
 Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
 Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
 The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.
 
 
 [3]
 The full text of 18 U.S.C. Sec. 510 is as follows:
 Sec. 510. Forging endorsements on Treasury checks or bonds or securities of the United States
 (a) Whoever, with intent to defraud--
 (1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or
 (2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 (b) Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States that in fact is stolen or bears a forged or falsely made endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
 (c) If the face value of the Treasury check or bond or security of the United States or the aggregate face value, if more than one Treasury check or bond or security of the United States, does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000 or imprisonment for not more than one year, or both.
 
 
 [4]
 Appellants' reliance on Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) is similarly misplaced. See United States v. Schaffner, 715 F.2d 1099, 1102 (6th Cir.1983) (Busic applicable to question of punishment not to question of whether a prosecutor may elect to charge under the less specific of two applicable statutes); United States v. Computer Sciences Corp., 689 F.2d 1181 (4th Cir.1982), cert. denied, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Moreover, in Busic, the Supreme Court held that a specific sentence enhancement provision preempted the general provision relying not only on the general-specific character of the provisions, but also on express indications in the legislative history
 
 
 [5]
 Section 510, enacted by P.L. 98-151, Sec. 115(a), Nov. 14, 1983, 97 Stat. 976, incorporated S. 1158, introduced by Sen. DeConcini on June 28, 1983. No Committee report was prepared specifically for that bill; however, the relevant Committee report was prepared for S. 1762, 98th Cong., 1st Sess. (1983) (Comprehensive Crime Control Act of 1983) which contained, inter alia, provisions substantially similar to Sen. DeConcini's proposed legislation. See United States v. Jimicum, 608 F.Supp. 1530, 1534 n. 5 (E.D.Wash.1985)
 
 
 [6]
 18 U.S.C. Sec. 495 provides in pertinent part as follows:
 Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or
 Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with the intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited ...;
 Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.
 
 
 [7]
 The six aims of Sec. 510 that Senator DeConcini listed were:
 First. Result in more forgers being prosecuted by U.S. attorneys;
 Second. Eliminate the need for creating "legal fictions" which result from prosecuting under misdemeanor laws that may not directly address the forgery offense;
 Third. Increase plea negotiation flexibility and guilty pleas;
 Fourth. Increase use of the U.S. magistrates in check forgery cases and reduce the number of felony trials, thereby reducing the burden on the Federal district courts;
 Fifth. Provide more accurate conviction records which may be useful in future prosecutions of repeat offenders; and
 Sixth. Provide a realistic penalty structure.
 
 
 [129]
 Cong.Rec. S9342 (daily ed. June 28, 1983) (statement of Sen. DeConcini)