UNITED STATES of America,
Plaintiff–Appellee,

v.

Jimmy Dale BARRETT,
Defendant–Appellant.

No. 86–1970.

United States Court of Appeals,
Tenth Circuit.

Jan. 27, 1988.

Phil Frazier of Frazier, Smith & Phillips, Tulsa, Okl., for defendant-appellant.

Susan W. Pennington, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with her on the brief), Tulsa, Okl., for plaintiff-appellee.

Before LOGAN, SETH and BARRETT, Circuit Judges.

LOGAN, Circuit Judge.

The sole issue in this appeal is whether a defendant who forges an endorsement on a treasury check written for $500 or less must be prosecuted for a misdemeanor under 18 U.S.C. § 510, or may be prosecuted for a felony under 18 U.S.C. § 495, which by longstanding judicial construction proscribes the same conduct.

Defendant, Jimmy Dale Barrett, was convicted of forging and uttering (using as a medium of payment) a treasury check in the amount of $236.38, in violation of § 495, and was sentenced to six years in prison. Defendant then moved under 28 U.S.C. § 2255 to correct this sentence. The district court denied the motion.

On appeal defendant contends that the later and more specific enactment of 18 U.S.C. § 510,[1] which treats the forgery of a

1. Section 510 provides:
"(a) Whoever, with intent to defraud—

(1) falsely makes or forges any endorsement or signature on a Treasury check or bond or security of the United States; or

treasury check written for $500 or less as a misdemeanor, supersedes and, insofar as it applies to treasury checks, repeals by implication the earlier and more general provisions of 18 U.S.C. § 495,[2] which treats all forgeries of written instruments as felonies.[3] Following the lead of four other circuits, we reject defendant's argument and affirm. *See United States v. Cavada*, 821 F.2d 1046 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 304, 98 L.Ed.2d 262 (1987); *Edwards v. United States*, 814 F.2d 486 (7th Cir.1987); *United States v. Jackson*, 805 F.2d 457 (2d Cir.1986) (rejecting claim of implied repeal of § 495 by 18 U.S.C. § 641 and discussing extensively the relationship between §§ 495 and 510), *cert. denied*, —— U.S. ——, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *United States v. Edmonson*, 792 F.2d 1492 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987).

■ Courts are reluctant to find repeal by implication even when a later statute is not entirely harmonious with an earlier one. *Watts v. Alaska*, 451 U.S. 259, 266–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981). If two statutes conflict somewhat, a court must if possible read them so as to give effect to both, unless the text or legislative history of the later statute shows that Congress intended to repeal the earlier and simply failed to do so expressly. *Id.* at 267, 101 S.Ct. at 1678.

The leading case discussing repeal by implication is *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). There the defendant was convicted under 18 U.S.C. § 922(h), a statute which carried a maximum five-year prison term and prohibited receipt by convicted felons of firearms that had traveled in interstate commerce. A later-enacted statute, 18 U.S.C. § 1202(a), prohibited the same conduct but permitted only a maximum two-year term. The Supreme Court affirmed the conviction under the more stringent statute, holding that the two statutes could coexist:

> "[I]t is 'not enough to show that the two statutes produce differing results when applied to the same factual situation.' *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 [96 S.Ct. 1989, 1993, 48 L.Ed.2d 540] (1976). Rather, the legislative intent to repeal must be manifest in the 'positive repugnancy between the provisions.' *United States v. Borden Co.*, 308 U.S. 188, 199 [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939)."

442 U.S. at 122, 99 S.Ct. at 2203.

■ In the instant case, no such positive repugnancy exists. Many other cases have held that a prosecutor may act under either of two overlapping statutes so long as there is no express congressional intent to the contrary. This is so, as here, even when the later statute is specific and the earlier a general criminal statute. *See*

---

(2) passes, utters, or publishes, or attempts to pass, utter, or publish, any Treasury check or bond or security of the United States bearing a falsely made or forged endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(b) Whoever, with knowledge that such Treasury check or bond or security of the United States is stolen or bears a falsely made or forged endorsement or signature buys, sells, exchanges, receives, delivers, retains, or conceals any such Treasury check or bond or security of the United States that in fact is stolen or bears a forged or falsely made endorsement or signature shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(c) If the face value of the Treasury check or bond or security of the United States or the aggregate face value, if more than one Treasury check or bond or security of the United States, does not exceed $500, in any of the above-mentioned offenses, the penalty shall be a fine of not more than $1,000 or imprisonment for not more than one year, or both."

**2.** Section 495 states:

"Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money ... [s]hall be fined not more than $1,000 or imprisoned not more than ten years, or both."

**3.** The statutory predecessor to § 495 was construed to apply to the forgery of an endorsement on a treasury check. *Prussian v. United States*, 282 U.S. 675, 679–80, 51 S.Ct. 223, 224–25, 75 L.Ed. 610 (1931).

*Jackson,* 805 F.2d at 460; *United States v. Largo,* 775 F.2d 1099, 1100–01 (10th Cir. 1985) (per curiam) (upholding conviction under 18 U.S.C. § 641 for embezzling Indian Self–Determination and Education Assistance Funds despite more specific prohibition in 28 U.S.C. § 450(d) against same act), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 891, 88 L.Ed.2d 925 (1986); *United States v. Fern,* 696 F.2d 1269, 1273–74 (11th Cir. 1983) (upholding conviction under 18 U.S.C. § 1001 for false statement to revenue agent despite specific prohibition of false statement to Internal Revenue Service in 26 U.S.C. § 7207); *United States v. Mackie,* 681 F.2d 1121, 1122 (9th Cir.1982) (upholding convictions under Migratory Bird Treaty Act, 16 U.S.C. §§ 703 and 707(b) despite later-enacted, more specific provision in Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a)); *United States v. Radetsky,* 535 F.2d 556, 567–68 (10th Cir.) (upholding convictions under 18 U.S.C. § 1001 for false statement in Medicare claims despite more specific later-enacted prohibitions in 42 U.S.C. § 408), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976).

The legislative history of § 510 does not disclose any congressional intent to repeal the overlapping provisions of § 495. The history shows that Congress' purpose in enacting § 510 was to close a loophole in § 495 inapplicable to our case. The Senate Report states:

"Because section 495 was not drafted to deal with obligations of the United States, many of the variations of offenses involved with the forgery of obligations are not included within that section and cannot otherwise be prosecuted under Federal law. For example, it is currently possible for a thief to steal a Treasury check endorsed by a payee, endorse his own name and obtain the proceeds, and not violate section 495. In addition, it is possible for a thief to steal one or more government checks or bonds from the rightful owner and sell them to a middle man and not violation [sic] section 495.

. . . .

... Section 511 [renumbered 510(b)] would also penalize whoever buys, sells, exchanges, receives, delivers, retains, or conceals a stolen United States security or one that bears a forged endorsement or signature knowing that the security is stolen or bears such an endorsement." S.Rep. No. 225, 98th Cong., 1st Sess. 371–72 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3512–13. This statement shows that Congress was aware of § 495 when enacting § 510; it discloses no congressional purpose to repeal all or part of § 495.

Further, to give full effect to both statutes and to allow prosecution under the one imposing the stiffer penalty does not violate the so-called rule of lenity. That rule states that when there is ambiguity in a criminal statute requiring judicial interpretation, a court must resolve that ambiguity in favor of lenity. *Batchelder,* 442 U.S. at 121, 99 S.Ct. at 2202. No such ambiguity exists here concerning either § 495 or § 510. Each statute plainly applies to defendants' criminal acts. *See Cavada,* 821 F.2d at 1048 (finding rule of lenity inapplicable); *Jackson,* 805 F.2d at 465 (same); *Edmonson,* 792 F.2d at 1498 (same).

For the foregoing reasons, we AFFIRM the ruling of the district court.