UNITED STATES of America, Plaintiff,

v.

Marlo LAYNE, Defendant.

No. P6108935/UP24.

United States District Court,
D. Utah, C.D.

March 25, 1994.

Kevin Sundwall, State's Asst. U.S. Atty., Salt Lake City, UT, for plaintiff.

Scott Cunningham, Salt Lake City, UT, for defendant.

### MEMORANDUM AND ORDER

BOYCE, United States Magistrate Judge.

Defendant, Marlo Layne, is charged with a violation of 36 Code of Federal Regulations (CFR) 2.35(b). It is alleged that the defen-

dant was in possession of a controlled substance within the area of Zion National Park. The probable cause statement indicates a Park Ranger found three (3) baggies of marijuana, barbiturates, and hallucinogenic mushrooms in the defendant's purse. This is the basis of the possession charge. However, at hearing, possession of marijuana was all the government indicated it was pursuing.

The issue now before the court is whether 36 CFR 2.35(b) is a valid exercise of the rule making authority given to the Secretary of the Interior or whether the provisions of 21 U.S.C. § 844(a) govern the defendant's conduct. Only the possession of marijuana charged as illegally possessed is considered as directly relevant to the determination.

21 U.S.C. § 844(a) is a congressional enactment providing the offense and penalty for simple possession of a controlled substance:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this subchapter or subchapter 11 of this chapter. Any person who violates this subsection shall be sentenced to a term of imprisonment of not more than one year, a fine of not more than $5,000, or both, except that if he commits such offense after a prior conviction or convictions under this subsection have become final, he shall be sentenced to a term of imprisonment of not more than 2 years. . . .

A controlled substance is any schedule I drug under 21 U.S.C. § 812 and includes marijuana. See 21 U.S.C. § 802(6).

36 CFR 2.35(b) relates to possession and other activities with regard to controlled substances in national parks and states a prohibition:

> The following is prohibited:

(1) The *delivery* of a controlled substance, except when distribution is made by a practitioner in accordance with applicable law. For the purposes of this paragraph, delivery means the actual, attempted or constructive transfer of a controlled substance whether or not there exists an agency relationship.

(2) The *possession* of a controlled substance, unless such substance was obtained by the possessor directly, or pursuant to a valid prescription or order, from a practitioner acting in the course of professional practice or otherwise allowed by Federal or State law. (Emphasis added)

The term controlled substance is not defined and the CFR covers delivery (distribution) as well as possession. 36 CFR § 1.3 provides a penalty of six month imprisonment and a $500 fine [1] for a violation of 36 CFR § 2.35(b). In Part 2 of Title 36 CFR the Secretary of the Interior cites 16 U.S.C. §§ 1, 3, 9a, and 462(k) for the authority to promulgate the regulation in section 2.35(b).

16 U.S.C. § 1 creates the National Park Service within the Department of Interior and authorizes the Secretary of Interior to make regulations for the "use" of National Parks. In *Wilkenson v. Department of Interior*, 634 F.Supp. 1265 (D.Colo.1986) the court construed the authority of the Secretary of the Interior to make rules for the use and management of National Parks as "very broad." The case considered the power to control access roads in a National Park. See also *Sierra Club v. Andrus*, 487 F.Supp 443 (D.D.C.1980) aff'd in part 659 F.2d 203 (D.C.Cir.1981).

16 U.S.C. § 3 provides in part:

> The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the *use and management* of the parks, monuments, and reservations under the jurisdiction of the National Park Service, and any violation of any of the rules and regulations authorized by this section and sections 1, 2 and 4 of this title shall be pun-

---

1. Under the Fines Act a petty offense fine is elevated to $5,000. 18 U.S.C. § 3571(b)(7). The fine under 21 U.S.C. § 844(a) is a minimum mandatory $1,000 up to $100,000. See 21 U.S.C. § 844(a) and 18 U.S.C. § 3571(b)(5).

ished by a fine of not more than $500 or imprisonment for not exceeding six months, or both, and be adjudged to pay all costs of the proceedings.

(Emphasis added).

Under this .section a court will not judicially upset an action of the Secretary unless his action is arbitrary or beyond his authority. *Udall v. Washington, Va. & Md. Coach Co.,* 398 F.2d 765 (D.C.Cir.1968). The Secretary's regulations have the force of law *United States v. Petersen,* 91 F.Supp. 209 (S.D.Cal.1950) (regulation of the sale of alcohol).

16 U.S.C. § 9a relates to certain powers of the Secretary of the Army in regard to National Military Parks and is not pertinent to this case. 16 U.S.C. § 462(k) relates to powers and duties of the Secretary of Interior and empowers the Secretary to make rules and regulations ... "necessary and proper" to his imposed obligation to carry out certain specified functions and authorizes a sanction of $500 in costs. This appears to be limited to functions set forth in 16 U.S.C. § 461–467 which are duties of the Secretary.

Nothing in any of the statutes expressly grants the Secretary specific authority with regard to the possession and delivery of controlled substances. If Congress has not otherwise provided for a comprehensive regularitory scheme, the Secretary of the Interior may have authority under 16 U.S.C. §§ 1 & 3 to promulgate regulations with regard to controlled substances as part of the use and management of the National Parks. This activity is in the exercise of proprietary jurisdiction over federal lands. It should be observed that in exercising the delegated authority under 16 U.S.C. §§ 1–3, the Secretary of the Interior has set a petty offense penalty for conduct that would be a misdemeanor or serious felony under title 21 U.S.C. § 801 et seq. See 21 U.S.C. § 841(b) which sets a penalty for distribution of a controlled substance; 842(c)(1) setting penalties for distribution in violation of § 829 (pre-

scriptions); § 843(c) setting a penalty for certain distributions of controlled substances; and § 844(a) setting a penalty for possession, which dependent on the circumstances, can be a misdemeanor or a felony.

■ Congress, in 1970, made extensive findings as to the need for prevention of drug abuse, Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, and intended to regulate interstate and intrastate drug abuse under the 1970 Act.[2] 21 U.S.C. § 841 et seq. sets forth a comprehensive federal regulatory and prohibitory scheme for dealing with drug abuse. The 1986 Anti Drug Abuse Act, was a further comprehensive and encompassing congressional enactment to combat drug abuse. Pub.L. 99–570 § 1 et seq. October 27, 1986, 100 Stat. 3207, amending the Comprehensive Drug Abuse Prevention and Control Act of 1970. Also, there have been more recent amendments. Further, sentencing under Title 21 is subject to federal sentencing guidelines. United States Sentencing Guidelines (USSG), November 1, 1993 Part D, i.e. § 2D1.1 etc.[3] Congress has set out specific, broad, and comprehensive standards for federal anti-drug enforcement which are inconsistent with the Secretary of Interior's regulatory promulgations in 36 CFR 2.35(b). Congress may regulate the same conduct at different penalty levels and leave to the prosecutor's discretion which offense to charge. This difference was noted in *United States v. Barial,* 841 F.Supp. 171 (E.D.Va.1993) where the court found different standards applicable between 21 U.S.C. § 844 and 36 CFR 2.35(b). The court said "Persons arrested for possession of controlled substances within a National Park may be charged under either 21 U.S.C. § 844 or 35 CFR 2.35(b)(2)." The court rejected an equal protection argument under authority of *United States v. Batchelder,* 442 U.S. 114, 123–25, 99 S.Ct. 2198, 2203–05, 60 L.Ed.2d 755 (1979) (offenders may be charged under more than one statute and prosecutor has discretion as to which

**2.** The comprehensive statute, enacted in 1970, for the first time created a single all-encompassing scheme covering both narcotic and dangerous drugs. Abrams & Beale, *Federal Criminal Law,* 2d Ed. p. 258 (1993).

**3.** See also United States Sentencing Commission, Proceedings of the Inaugural Symposium on Crime and Punishment in The United States, Drugs and Violence (1993).

offense to charge).[4]  However, the result in *Barial* was incongruous and the case did not consider whether congress intended the provisions of Title 21 to be preemptive of promulgations under the general regulatory authority to manage the use of federal lands.

In *Batchelder* the Supreme Court adopted a legislative intent standard to determine if Congress actually intended to grant the prosecutor the authority to select between different statutes or offenses. See Campbell, *Law of Sentencing* 2d Ed. § 9.11 (1991). The issue therefore, must be examined to determine what Congress actually intended by the various legislative provisions. *United States v. Largo,* 775 F.2d 1099 (10th Cir.1985).

In *United States v. Batchelder,* supra, the court reached the conclusion that two statutes could properly overlap the same subject matter. Whether this is intended has to be determined by examining "the language, structure, or legislative history" 442 U.S. at 118, 99 S.Ct. at 2201. In *Batchelder* the court concluded that each statute was intended to operate independently of the other. The court said that congress intended to enact two independent gun control statutes, each fully enforceable on its own terms, which was confirmed by the legislative history. Id. at p. 119, 99 S.Ct. at 2202. The court said Congress had "conveyed its purpose clearly ..." Id. at p. 122, 99 S.Ct. at 2203.

In *Largo* the court held a defendant could properly be convicted under a general theft statute, even though another statute was more specific to the conduct and provided a lesser penalty. The court did not consider the *Batchelder* elements, but relied on *United States v. Afflerbach,* 754 F.2d 866 (10th Cir.1985) where the court allowed a prosecution under a general statute where a more specific statute could have been applied. However, in *Afflerbach* the court didn't actually provide analysis for its position and the court's reasoning for its result is not provided. The problem now before this court was not actually addressed in either case Id. at p. 871. In both cases Tenth Circuit Judge McKay contended the specific statute and sentence should have governed. He distin-

guished *Batchelder* noting that that case dealt with two specific overlapping statutes. That is not the circumstance now before the court.

█   It has been said that a specific statute is not nullified by a general statute regardless of priority of enactment, absent a clear congressional intention otherwise. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). A specific statute usually governs over the general. *Morales v. Trans World Airlines, Inc.,* — U.S. —, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). See also *Glover Const. Co. v. Andrus,* 591 F.2d 554 (10th Cir.1979) aff'd other grounds 446 U.S. 608, 100 S.Ct. 1905, 64 L.Ed.2d 548; *State of Utah v. Andrus,* 486 F.Supp. 995 (D.Utah 1979); *Wesreco, Inc. v. Dept. of Interior,* 618 F.Supp. 562 (D.Utah 1985). This applies in criminal cases, *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *United States v. Cowboy,* 694 F.2d 1228 (10th Cir.1982) (liquor sales statute on Indian reservations governs over general crimes act).

█   The object of statutory construction is to effectuate the Congressional or legislative intent. *Negonsott v. Samuels,* — U.S. —, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993); *State of Colo. v. Idarado Min. Co.,* 916 F.2d 1486 (10th Cir.1990); *Marc Development v. Federal Deposit Ins. Corp.,* 771 F.Supp. 1163 (D.Utah 1991). Judicial perception that a result may be unreasonable may be utilized in interpreting statutory provisions unless the congressional intent is clear. *CIR v. Asphalt Products Co., Inc.,* 482 U.S. 117, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987). A court must not only look to the language of the statute but the "design of the statute as a whole and its object and policy." *Crandon v. United States,* 494 U.S. 152, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). The title of legislation may also be considered in interpreting the intent of Congress. *INS v. National Center for Immigrants' Rights, Inc.;* —

---

4.  See also *United States v. Splawn,* 982 F.2d 414, 418 (10th Cir.1992); *United States v. Langston,*

970 F.2d 692 (10th Cir.1992); *United States v. Barrett,* 837 F.2d 933 (10th Cir.1988).

U.S. ——, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991).

Applying the above stated principles, the following factors are pertinent:

■ 1. The provisions of Title 16 giving authority to the Secretary of the Interior and others to promulgate rules and regulations for the national parks and other areas are general enabling provisions and do not specifically address controlled substances. The language in 16 U.S.C. §§ 1 and 3 speaks in terms of "use of" and "use and management of the parks ..." There is no indication of any intention on the part of Congress that the Secretary of Interior have the overriding power to legislate for controlled substances let alone to do so contrary to specific comprehensive congressional legislation. Just two years before enactment of Title 16 § 1 et seq. Congress had enacted the Harrison Narcotic Act of 1914 to address the national narcotics and drug abuse problem. Other statutes of the same subject were thereafter enacted by Congress and nothing suggests Congress ever intended to grant any special drug enforcement authority to the Secretary of Interior, let alone the power to depart from other specific congressional direction. See generally, Quinn and McLaughlin, *The Evolution of Federal Drug Control Legislation,* 22 Catholic U.L.Rev. 586 (1973).

■ 2. In promulgating 36 CFR 2.35(b) the Secretary of the Interior has set forth standards directly at odds with the more comprehensive expansive drug legislation enacted by Congress. The result between 36 CFR and Title 21 U.S.C. is incongruity and a perception of unreasonableness. A person possessing marijuana on a federal military reservation in Utah may face a misdemeanor or a felony charge. If a few miles away in a National Park the matter is a petty offense. The Secretary of Interior purports to treat the delivery of a controlled substance as a petty offense. "Delivery" is expressly defined in 21 U.S.C. § 802(8) and penalized in 21 U.S.C. § 841. Under the Secretary's promulgation a person could deliver 100 kilos of cocaine to someone at Zions National Park

and theoretically be prosecuted for a petty offense. The absurd result is obvious. Congress certainly did not intend such a circumstance. The congressional intent in support of the Secretary's action is at least unclear. Nothing in *United States v. Batchelder,* supra, requires a conclusion that a prosecutor may elect between 21 U.S.C. § 844 and 36 CFR 2.35(b). Congress did not intend two such separate and disparate laws to operate in the area of drug enforcement. Therefore, the court must reject the conclusion to the contrary expressed in *United States v. Barial,* supra.

■ 3. The title of the Comprehensive Drug Abuse and Control Act of 1970 itself suggests congress intended all federal drug prosecutions to be within that Act, as amended, except where Congress exempted or otherwise provided a specific alternative. The legislation was to be "comprehensive." 36 CFR 2.35(b) does not create a circumstance compatible with Title 21. Also, the Congressional approach in the 1984, 1986, 1988 and 1990 amendments to the 1970 Comprehensive Drug Abuse and Control Act shows that Congress has consistently become more comprehensive, encompassing, uniform, and preemptive in its approach to anti-drug enforcement and that penalties for controlled substance violations were considered to be those provided for in Title 21 and under the USSG. The historical context supports a conclusion that Congress did not intend separate rule making authority for controlled substances in the National Parks.[5]

Therefore, it is concluded that the promulgation of the Secretary of the Interior relating to controlled substances in 36 CFR § 2.35(b) is inconsistent with the Congressional intent and the comprehensive regulatory scheme in Title 21. The provisions of 36 CFR § 2.35(b) are ultra vires. The provision is arbitrary and beyond the Secretary's authority.

The United States has indicated it does not wish to pursue this prosecution further under 21 U.S.C. § 844(a). Therefore,

---

**5.** It is appropriate to consider legislation in its historical context to determine legislative intent.

*Ute Indian Tribe v. State of Utah,* 716 F.2d 1298 (10th Cir.1983).

**IT IS HEREBY ORDERED** the defendant's motion to dismiss the charge against her under 36 CFR § 2.35(b) is granted.